May it please the court. Good morning. My name is Alvin Gomez. I represent the appellants in this matter. The trial court made the ultimate finding that there were no factual allegations made which were consistent with any legal theory that we submit at the trial court level. Essentially, the trial court ignored what I consider pertinent facts in reaching the ultimate conclusion to dismiss the case. In this case, we have a situation where we have two Mexican nationals who rented a car from an Enterprise Rent-A-Car who represented themselves as being the experts in the field of car rental. In fact, Mr. Becerra and Mr. Abraham notified Mr. Sansone, the manager at Enterprise Rent-A-Car, that they were going to travel into Mexico. They were Mexican nationals. Let me understand just how this happened factually. Were they resident in the United States, Mexican citizens resident in the United States, going to Mexico on vacation and then coming back? No, they were Mexican nationals who lived in Mexico. They weren't citizens of the United States. I understand they weren't citizens, but I'm trying to figure out why are they in the United States renting a car from Enterprise and then are coming back? Oh, because they lived in the interior of Mexico, in Mexico City area, and so they flew into the U.S. and they had meetings for their company and where they were going. And were they then, was the rental contract, they were going to bring the car back to the United States? Correct. I see, okay. Yeah, it was temporary use. Okay, so the terms of the rental are, I want to rent the car here in the United States, I want to travel into Mexico with the car, I want to bring the car back to the United States, I'll then give it back to you and then I'll go on my way. Correct. Okay, I got it. It seems that your case boils down to whether or not Mr. Sansone should have told your clients that it was illegal in Mexico under Mexican laws for Mexican nationals to rent American rent-a-cars and take them into Mexico. That is true. That's pretty much what it boils down to? That's a very important issue, material issue of the case because what happens in, there's no dispute that Mr. Becerra and Mr. Abraham were arrested and detained in Mexico and they're currently still being charged for violation of Mexican law. Let me just stop you there. Yes. You don't allege that there's ongoing criminal charges in your complaint. You say it's an odd formulation. It is plaintiff's understanding that criminal charges have been levied against them in Mexico. The charges have exposed plaintiffs to prison and substantial fines. Why do you say it's plaintiff's understanding? I don't see a statement in your complaint that either Mexican law makes it illegal for them to drive a car in under rental agreement or a statement that they are currently undergoing criminal charges. The best you have is it's plaintiff's understanding that criminal charges have been levied. And on this motion, can you explain that? Yes. Maybe it was just I wasn't clear in my presentation of the pleading, but criminal charges are currently pending in Mexico with regard to these against Mr. Abraham. How do we know that? How do we know that? Well, they were arrested and there were words. You said they're currently pending. How do we know that? Because it says that they're currently subject to imprisonment and fines in Mexico. You can infer based upon that. Do you have any charging documents or anything like that? Yes, we do have charging documents. Where are they? Well, it was my understanding. Where are they? I didn't attach them to the pleading, Your Honor. Why not? Because I didn't think it was. I mean, the whole case down below seemed to be whether or not this was illegal. And I can't find anything in here whether you demonstrated or proved to anybody's satisfaction that it was. I mean, I pick up your blue brief and it says all this business and you cite the E.R. 27 and 28. Your excerpt of record isn't consecutively numbered. I couldn't find anything in the E.R. that's consecutively numbered like you say 1 E.R. 28. There's no 1 E.R. 28 in here. I mean, you say this, but there's nothing in here to prove it. Do you understand? The district court kept telling you, you've got to show me where this claim that it's illegal to do this is illegal. And you didn't do that. You say you have charging documents and papers and everything like that, but they're not in the record. Why is that? Because it was my understanding this was a motion to dismiss and the court basically ---- The court kept telling you over and over again, prove it. And all you did was cite these sections that talk about merchandise and things like that. But those are the exact sections that were cited in the citation. How do we know that? You don't have the ---- Where are the charging documents? Wait a minute. This is a 12b-6 motion. Yeah. Correct. This is not a summary judgment. Correct. But it is alleged. We didn't have to prove anything. That was the problem that I had is this was an issue, a fact that had to be proved later. This was a 12b-6 where all we had to do was set forth in the pleading itself, not attach exhibits and prove our case. And that was the entire problem that I had is because the court made a decision by accepting all the facts as true and any inferences that can be drawn therefrom and basically threw the case out without one. With regard to the issue of Metskan law, there has to be a determination made as far as what the Metskan law is. And that, in other cases such as Hernandez where the court made a determination of what is considered moral damages or whether they're considered pain and suffering or not, expert testimony is required with regard to that. And in this case, with regard to whether or not there's the violation of Metskan law, instead of summarily saying there's no violation of Metskan law, well, we know ---- Do you allege in your complaint ---- I have to go back and look at it. My understanding is, but I guess I shouldn't say my understanding is, given the ---- I know. I made that mistake. My recollection is that you specifically allege that they have paid a fine of the American equivalent of about $9,000. Is that specifically alleged in the complaint? Yes, that was alleged in the complaint. Okay. Where in your complaint do you say it is illegal under Mexican law for these people to have done what they did? And therefore, you, Enterprise, should have told us that. Okay. But I'm looking for something in the complaint beyond its paragraph 70 that says it is illegal under Mexican law. For Mexican nationals to rent a car and bring it into Mexico. Let's see. Because I think that's what the district judge was struggling with through four complaints. Yes. I believe ---- I can't pinpoint it for you right now, but where we say that when they were arrested, they were arrested for the charges because they were ---- That's paragraph 70, yes. They were Mexican nationals who were bringing in a vehicle when they shouldn't have brought in because it was in paragraph 8, because it was illegal and against the laws of Mexico for Mexican nationals to transport a commercial vehicle into Mexico. That's in paragraph 8. My understanding of Mexican law on this point is that it's theoretically available to a Mexican national to bring in a rental car, but the documentation required is extraordinary. And what the Mexicans are concerned about is unlawful importation of American vehicles for resale in Mexico without paying tariffs. Correct. So I think it's theoretically possible to bring in an American-plated vehicle, but you need more documentation than just your rental contract. Correct. You need the ---- all the documentation in addition that you, in fact, own the vehicle and that you're going to pay the appropriate tariffs when you import it. So I hear you say it isn't illegal for Mexican nationals to rent cars in the United States and drive them into Mexico? If they want to go through the border, it becomes illegal at that point in time because it's a commercial transaction. You just answered my question differently from the way you just answered Judge Ross' question. My question was, isn't it ---- I won't say it as a question. My understanding of Mexican law is that it is illegal for a Mexican national to come into Mexico with an American-plated car, whether rental or otherwise, but if it's a rental car, without an extraordinary amount of documentation, that this car is not being brought into Mexico for the purposes of resale and that the rental contract by itself is insufficient documentation. Correct. And so I understand what you're saying. I was focusing on the facts of this case, not in the generic sense. What should Mr. Sansone have told your clients? What's the gravamen of your beef with Mr. Sansone and Enterprise? He shouldn't have rented them the car to go travel to Mexico because they're Mexican nationals and they wouldn't have had the proper paperwork to transport. They would have been arrested. In essence, what they're saying, Enterprise is saying, we want one free buy of the Apple. If they do it now and they rent a car to a Mexican national who's arrested, they're done. What did Sansone tell your clients that you dispute as being misleading? Well, they said that here's what you need to transport the vehicle into Mexico. You need ñ we need proper insurance, Mexico insurance. In your reply brief, you say, to the contrary, the allegation by appellants is that prior to renting the vehicle, Mr. Sansone was silent as to his knowledge or lack thereof of Mexican law. That was focused on after the fact. After the fact, when they had a conversation with Mr. Sansone, Mr. Sansone had told him after the fact that he was unaware that they couldn't transport it to Mexico. He gave them documentation, including Mexican insurance, which they purchased directly from them as the agent that they could travel into Mexico. And that's the issue. He should have never rented the vehicle to them as Mexican nationals without giving them all the appropriate documentation. And by putting ñ Was he silent or did he tell them that it was okay? He said it was okay to travel to Mexico because he sold them the insurance to go into Mexico. He knew exactly where they were going with the vehicle and what they were going to use the vehicle for. And he says the prerequisite of going into Mexico is Mexican insurance, and that's what they provided was Mexican insurance. Is it possible that what was really happening on the ground was that they were being shaken down for $9,000 by Mexican border officials and that was the end of it? No, because the ñ although not artfully pled in my pleading, or specifically pled in the pleading, the charges are currently pending. They're still ongoing as far as ñ Violation of those two articles? Correct. My reading don't say that it's illegal to bring a rental car into Mexico if you're a Mexican national. Yeah. It may be for trade. It may be if you're going to sell it in Mexico. Right. Otherwise, it doesn't seem to be illegal under those two articles. Your paragraph 117 says plaintiffs have been damaged in the amount of $9,000, and they have been damaged because they were held by Mexican authorities for hours, and they are facing criminal charges in Mexico. So not ñ you've gotten away from my understanding. As you're simply alleging, they are facing criminal charges in Mexico. Correct. Now, that may or may not be true, but that's the allegation. And so the whole issue is did we submit sufficient facts to the trial court and was the trial court ñ did appropriately dismiss the case in our position as they were inappropriate in dismissing the case because we did allege factual allegations, and it's up for the trial faculty to buy a trial or buy a motion and for us to prove the case. Okay. And your basic allegation is that they should have known that, that they are, I guess, a common carrier under California law with certain obligations to the people to whom they rent, and that one of their obligations was they should have known this and then they should have transmitted the warning, and the warning would have been such that said, listen, you better not do this because I'm not going to be able to supply you with the appropriate documentation. Correct. Let's hear from the other side. Thank you. I'm sorry. Hold on one second. Please, please. I'm sorry. Where is one, volume one of the excerpt of record, page 27 and page 28? Twenty-seven. It's probably referring to the complaint, if that's what you're referring to. Why did you not consecutively number the excerpt of record? I wasted an awful lot of time digging around in this record, trying to find your references to the excerpt of record, and you didn't consecutively. Are you familiar with our rules? Yes, I am, Your Honor. Why aren't these consecutively numbered? They should have been consecutively numbered. They should have been. That was our fault. Well, what's 28 and what's 27? Well, never mind, because there is no 28 and 27. I couldn't find it either. You can sit down. Thank you, Your Honor. I apologize. Good morning. May it please the Court. Jennifer Capobianco for Defendant Enterprise Rent-A-Car Company of Los Angeles. I think the Court has focused on what the real issue in this case is. What is it? Whether it is illegal for a Mexican national to bring an American rental car into Mexico and cross the border. Does that appear at a 12b-6 as compared to something else? Well, what they're trying to do is make allegations to support the causes of action of the complaint. They have not made any allegation to show, other than the conclusion of law, which is insufficient to withstand a 12b-6 motion, that it is actually illegal to do so. And without that fact, Enterprise did nothing wrong. Well, my understanding as to what's going on in the district court is the district court looked at the English translation of the Mexican statutes that were advanced to him and says, I don't read Mexican law that way. Correct? Well, he didn't read the law that was provided to him that way, and neither do I. Nothing in the laws that were provided say anything about rental cars. Nothing in the laws say anything about Mexican nationals. The laws that were provided are about import and export, and they apply to everybody. Here's the issue. I'm sorry. No, go ahead, please. Here's the issue. I sit as a district judge. It's notoriously difficult for a district judge to understand and have proved up foreign law. There's a specific provision of the Federal Rules of Civil Procedure to do it. Very often I have two conflicting views from foreign national lawyers as to what the statute says. Why should we be called upon to make that determination as to what Mexican law says, because you just told us what you think Mexican law says or doesn't say, on a motion to dismiss? Why shouldn't the other side have the ability, once they've alleged the illegality, and I was questioning whether or not they've alleged it, but assuming they've alleged the illegality under Mexican law, why shouldn't they have the opportunity to prove up what Mexican law actually is, rather than being out of court on a 12b-6? Because on a 12b-6 what the court does is decide issues of law, and you review the statute on the face to see what it says. And review of the statute is itself a question of law, which is exactly what 12b-6 motions address. Do you have any cases that support what you just said? What's your best case that would support that? Yes, Your Honor. Oh, I'm sorry. I'm looking at the wrong one. I do have a case citation for you. Yes, ma'am. Brady v. Brown. I'm sorry for the delay. 51 Federal 3rd 810. Interpretation of foreign law is de novo review because it is a question of law. And so we look at the law that he's provided. To say in the complaint that it is a violation of Mexico's law is a conclusional law. And once again, that in and of itself is not sufficient for 12b-6. In order to state the claim, you have to assert facts. And actual legal citations support your cause of action. But he's given Mexican statutes. I have to say that as I read the English translation of the Mexican statutes, I cannot see offhand that what he did is forbidden. On the other hand, American law is sometimes mysterious, and I am willing to assume that Mexican law is sometimes mysterious. And we have an allegation of fact that they have been held in Mexico for violating Mexican law, that they have been fined $9,000 under Mexican law, and that they are currently facing criminal charges under Mexican law. And are you saying to me that an American judge reading an English translation of two Mexican statutes can be sufficiently sure that he understands Mexican law to decide that it's not true that they were fined $9,000 under Mexican law and are facing criminal charges under that Mexican law? I do not think that we can say it's not true that they weren't fined or it's not true that they weren't charged. But I think that Judge Stein hit the point on the head, how do we know that they're not being shaken down for the money? These are two men who are traveling across the border with $9,000 in cash on them, and the border officials took it from them. We have the facts as alleged, which we have to take as true, of pending criminal charges, payment of $9,000, dozens that, and detention at the border. Don't those facts make it plausible under ICBAL? Those are facts, not just statement of law. Plausible enough under ICBAL to get past motion to dismiss? No. And here's the reason. It's not just whether it was illegal, but it's whether Enterprise knew or should have known. And looking at this law and looking at what's available, there's nothing from that that they knew or should have known. The appellants allege that Mr. Sansoni said he did not know, was not aware of this law, were arguing over this law. How could a business in the United States be able to interpret this law to suggest that it cannot rent a vehicle to a Mexican national? Sounds more like a jury argument or maybe something on summary judgment, not a 12B6 argument. Well, no, because it is a knew or should have known standard. And that's in order to establish duty. And duty is a question of law under California law. And we are, these are all California causes of action, and we follow California law. And there is no duty there. Are you a common carrier under California law? No, we are not. And I do have. I think that's wrong. I think that's flat wrong. I think you are a common carrier. Well, if you would like supplemental briefing on that issue, I'd be happy to provide it to you. I don't think you'll be happy once you research the question. Okay. On the basis of what do you deny that you are? Previous cases in representing Enterprise and arguing that issue and briefing it. So maybe I would be surprised. But that is not before the Court. There are cases that hold that Enterprise is not a common carrier under California law. That rental car companies are not common carriers. Maybe I'll be surprised, Your Honor. But I would say that that issue is not before the Court. It was not something that was ever raised. Okay. Well, if we want supplemental briefing, we will ask for it. You needn't volunteer it unless we ask for it. Okay. Have you independently done any research at all as to what happens to Mexican nationals when they drive American cars into Mexico? I have not. I have reviewed the law that's been provided in support of their claims, and that law does not say anything about a Mexican national. It does not say anything about rental car companies. It does not say anything about rental cars. I'm going to ask my question. So you've done no independent research as to what happens to Mexican nationals who drive American cars into Mexico? No. I have relied on the allegations of the complaint, which is what is to be reviewed solely. I understand that. But in terms of just your representation of your client, you didn't kind of figure out, oh, you know, this may be a problem? I have not done that work. Okay. Let's assume for the moment, and I don't ask you to concede, let's assume for the moment that it in fact is a violation of American law, of Mexican law, for Mexican citizens to drive American rental cars into Mexico without an extraordinary amount of documentation that shows that they're not about to smuggle it into Mexico and sell it without paying the tariff, and that a rental car contract is insufficient. So let's assume that what these two people did in driving the Enterprise car into Mexico in fact violated Mexican law. And let's assume that that's ascertainable. Does your client have a duty to say that? They only have a duty to say that if they knew or should have known that it was. Good question. Should they have known that? Because I said it's easily ascertainable. If it is easily ascertainable, does your client have a duty to inform these people at the time they rent the car? I guess I'm struggling with easily ascertainable. I'm not sure how they would become aware of that, Your Honor. Well, maybe a 15-minute Internet search. Okay. If it is easily ascertainable, I would still argue that unless they had some reason or something happen for them to know that they should be looking in that direction, then no. Okay. That, I think, was not litigated. I mean, that question was not answered below. Yes. Okay. Anything else I'll submit? No, thank you. Thank you. Would you like a minute?  Briefly, Your Honors, the bottom line is I believe that the issues that the Court is addressing are issues of fact for a trier of fact to address and not legal issues. And so I will submit on that. Okay. Thank you. Thank you. Thank both sides for their arguments. Visceral v. Enterprise Rent-A-Car is now submitted for decision. Thank you. Thank you. Oh, I'm sorry. Here we go. I'm distracted by my papers. The next case on the argument calendar is Pickett v. Allen. And hang on a second as counsel gets set up and as I get myself organized. Okay. When you're ready, counsel. Good morning, Your Honors. Eric Craig Jacobson for Appellant.
judges: Stein, Trott, Fletcher